UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LLOYD JAY HAMILTON, JR.,

   Petitioner,

v.          Case No:  2:13-cv-249-FtM-38DNF

SECRETARY, DOC,

   Respondents.

          /

### OPINION AND ORDER[1]

  This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Lloyd Jay Hamilton ("Petitioner"), a prisoner presently confined at the South Bay Correctional Facility in South Bay, Florida (Doc. 1, filed April 1, 2013).  Petitioner, proceeding *pro se*, attacks convictions entered by the Twentieth Judicial Circuit Court in Lee County, Florida for burglary of a dwelling, burglary of a conveyance, and petit theft. *Id.*  Respondent filed a response to the petition (Doc. 12). Petitioner filed a reply (Doc. 18).

  Petitioner raises fourteen claims in his petition.  Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be denied

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

or dismissed.[2]   Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted.   *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   **Background and Procedural History**

On May 23, 2007, Petitioner was charged by information with burglary of a dwelling, burglary of a conveyance, and petit theft (Ex. 3).[3]   Counsel was appointed to represent Petitioner (Ex. 2).   Petitioner and defense counsel Kristina Gotera ("Gotera") each filed motions requesting a *Nelson*[4] hearing to determine whether counsel should be removed (Ex. 4; Ex. 5).   Subsequently, while still represented by counsel, Petitioner filed two *pro se* motions to suppress (Ex. 7; Ex. 8).

A *Nelson* hearing was held on January 3, 2008 (Ex. 6).   After listening to Petitioner's reasons for seeking discharge, the court advised Petitioner to "get together" with Gotera and attempt to work things out (Ex. 6 at 174).   Petitioner then asked to represent himself and for a hearing on his motion to suppress. *Id.*   Gotera was appointed as stand-by counsel, and Petitioner was advised to follow appropriate procedures to file his motion to suppress. *Id.* at 175-76.

---

[2] In his reply, Petitioner concedes that Claim Eight, a claim for ineffective assistance of stand-by counsel is not properly before this Court (Doc. 18 at 27). Accordingly, Claim Eight is dismissed and will not be further addressed in this petition.

[3] Unless otherwise indicated, citations to exhibits are to those filed by Respondent on July 26, 2013 (Doc. 13).

[4] Under *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973), when it appears to a trial judge that a defendant wishes to discharge his court appointed counsel, the judge should make an inquiry of the defendant as to the reason for the request.

On January 10, 2008, Petitioner filed a second amended motion to suppress (Ex. 8).   A suppression hearing was held on March 10, 2008, and the trial court denied the motion (Ex. 10).

After a jury trial, Petitioner was found guilty as charged on all counts (Ex. 12).   He was sentenced to concurrent terms of ten years, five years, and sixty days in prison (Ex. 13).   Petitioner's convictions and sentences were *per curiam* affirmed on June 26, 2009 (Ex. 19); *Hamilton v. State*, 16 So. 3d 825 (Fla. 2d DCA 2009).

On February 9, 2010, Petitioner filed a state petition for writ of habeas corpus in which he raised six claims of ineffective assistance of appellate counsel (Ex. 21). Florida's Second District Court of Appeal denied the petition without a written opinion (Ex. 22); *Hamilton v. State*, 43 So. 3d 49 (Fla. 2d DCA 2010).

On October 18, 2010 Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion").   The post-conviction court denied the motion without an evidentiary hearing (Ex. 27).   Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 29); *Hamilton v. State*, 107 So. 3d 413 (Fla. 2d DCA 2013).

## II.   Governing Legal Principles

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   This standard is both mandatory and difficult to meet.   *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).   A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.   *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).   Notably, a state court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the

governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).   The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).   Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *28 U.S.C. § 2254(e)(1)*; *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.")

(quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

### B.    Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).   A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.*   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt.   *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."   *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.   That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In reviewing an ineffective assistance of appellate counsel claim, the standard of proof and standard of review are the same as in the context of ineffective assistance of trial counsel. *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*."), Appellate counsel's performance is prejudicial if "the neglected claim would have [had] a reasonable probability of success on appeal." *Philmore*, 575 F.3d at 1265 (quotation omitted).

## C.    Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.   Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.   *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).   In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state

court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750.   If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted).   To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"   *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).   Actual innocence means factual innocence, not legal insufficiency. *Bousley*

*v. United States,* 523 U.S. 614, 623 (1998).   To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).   In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.   Analysis

#### A.   Claim One

Petitioner asserts that the trial court erred by allowing him to represent himself without first determining whether his waiver of his right to counsel was free and voluntary and by failing to re-offer counsel to Petitioner at the suppression hearing and at trial (Doc. 1 at 4).   Specifically, Petitioner asserts:

> In the present case, the trial court failed to comply with the *Nelson* part of the equation:   The court made a partial inquiry into Petitioner's complaint, determined that counsel was providing competent representation, and advised Petitioner that his only options were to hire his own lawyer or represent himself.   But when Petitioner chose the latter option, the court failed to completely make a sufficient *Faretta* inquiry.

*Id.* at 5.   Petitioner notes that the trial court failed to inquire into Petitioner's "age, ability to read, ability to write, education, whether he was currently under the influence of drugs or alcohol, or had ever been diagnosed or treated for any mental illness, whether he had any physical problems which would hinder self-representation, or whether he had ever represented himself in a trial before." *Id.*   Petitioner raised this claim on direct appeal where it was denied (Ex. 19); *Hamilton v. State*, 16 So. 3d 825 (Fla. 2d DCA 2009).

The Sixth Amendment guarantees that in all criminal prosecutions, a defendant shall have the right to the assistance of counsel for his defense. U.S. Const. amend. VI.

The Sixth Amendment also guarantees a defendant the right to refuse the assistance of counsel and to represent himself in criminal proceedings. *Faretta v. California*, 422 U.S. 806, 834–35 (1975). "While the Constitution does not force a lawyer upon a defendant, it does require that any waiver of the right to counsel be knowing, voluntary and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 87-88 (2004) (citing and quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942); J*ohnson v. Zerbst*, 304 U.S. 458, 464–65 (1938)).

Petitioner does not assert that his waiver of counsel was not knowing, voluntary, and intelligent. Rather, he argues only that "[t]here is nothing in this record to show that Petitioner freely and intelligently waived his right to counsel at the *Nelson* hearing in January 2008." (Doc. 1 at 5). Petitioner claims that the trial court erred by failing to follow the model *Faretta* inquiry adopted by the Florida Supreme Court. *Id.* Petitioner does not identify a United States Supreme Court case holding that a trial court's failure to conduct a specific *Faretta* inquiry, even if such an inquiry is required under state law, is unconstitutional. While the Supreme Court has said that a defendant must be warned of the dangers and disadvantages of self-representation before being permitted to proceed *pro se*, the Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar*, 541 U.S. at 88–89. Because the Supreme Court has not mandated that a state court follow a specific script when examining a defendant's knowing and intelligent waiver, Petitioner has not shown that the state court of appeal's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law. *See, e.g., United States v. Stanley*, 739 F.3d 633 (11th Cir. 2014) ("The failure to hold a *Faretta* hearing 'is not error

as a matter of law.   If the trial record shows that a defendant knowingly and voluntarily elected to represent himself, the *Faretta* standard will be satisfied.'") (quoting *Nelson v. Alabama*, 292 F.3d 1291, 1295 (11th Cir. 2002)).

Likewise, no United States Supreme Court case requires a state trial court to re-inform a defendant at a suppression hearing that he had the right to an attorney.[5] Accordingly, Petitioner's claim that the trial court committed constitutional error for failing to do so does not state a meritorious § 2254 claim. *See, e.g., United States v. Unger,* 915 F.2d 759, 762 (1st Cir. 1990) (holding that the district court was free to find that the defendant's earlier waiver was still in force at the sentencing hearing in the absence of intervening events); *United States v. Fazzini*, 871 F.2d 635, 643 (7th Cir.1989) ("Once the defendant has knowingly and intelligently waived his right to counsel, only a substantial change in circumstances will require the district court to inquire whether the defendant wishes to revoke his earlier waiver."); *Arnold v. United States*, 414 F.2d 1056, 1059 (9th Cir.1969) (holding that, after a competent waiver of the right to counsel, a new waiver need not be obtained at every subsequent court appearance of the defendant).

Even if Claim One is liberally construed as a claim that Petitioner's waiver was not voluntary, knowing, and intelligent, the claim fails.   The ultimate question of whether the waiver of a constitutional right was valid is a mixed question of law and fact. The question of whether a waiver was voluntary is one of law. *Miller v. Fenton*, 474 U.S. 104, 110 (1985); *Marshall v. Lonberger*, 459 U.S. 422, 431 (1983).   The question of whether a waiver was knowing and intelligent is one of fact. *Marshall*, 459 U.S. at 432–37.   Thus,

---

[5] Petitioner was re-informed of his right to an attorney immediately prior to the start of his trial (Ex. 11 at4).

a state court's determination that a waiver was knowing and intelligent is entitled to a presumption of correctness and a federal habeas petitioner has the burden of rebutting that presumption of correctness through clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Tovar,* 541 U.S. at 92 ("[I]n a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel.").

That Petitioner's waiver was voluntary is clear from the transcript of Petitioner's *Nelson* hearing.   Petitioner told the court that "rather than go with [Gotera] on my case, I would rather have a panic attack right here and try to represent myself.   That's how strongly I feel about it." (Ex. 6 at 173).   The judge told Petitioner that, while he had the "absolute" right to represent himself, he did not want him to do so. *Id.* at 173-74.[6]   The court advised Petitioner to "get together" with Gotera to see what they could work out. *Id.* at 174.   At that point, Petitioner made an unequivocal request to represent himself which the trial court granted. *Id.*   Just prior to trial, Petitioner was re-questioned about his choice to proceed without counsel (Ex. 11 at 4).   The court re-iterated that Petitioner could "hire anyone [he] wanted, or deal with the public defender." *Id.*   Standby counsel Kimberly Spaga ("Spaga") was appointed to assist Petitioner. *Id.*   Petitioner affirmed his understanding that Spaga did not represent him. *Id.*   The state courts did not unreasonably conclude that Petitioner voluntarily waived his right to counsel.

Likewise, Petitioner has not presented clear and convincing evidence to overcome the state court's conclusion that his waiver was knowing and intelligent. *See Meriwether*

---

[6] Several times during the *Nelson* hearing, the court advised Petitioner that he (Petitioner) had not attended law school and that certain of Gotera's actions of which Petitioner had complained were likely strategic (Ex. 6 at 166, 167, 169).

*v. Chatman*, 292 F. App'x 806, 824 (11th Cir. 2008) (recognizing that in a § 2254 case, the petitioner has the burden to show his waiver was not knowing).   The Supreme Court has described a waiver of counsel as intelligent "when the defendant 'knows what he is doing and his choice is made with eyes open.'" *Iowa v. Tovar*, 541 U.S. 77, 88 (2004) (citing *Adams v. McCann*, 317 U.S. 269, 279 (1942)).   The information necessary for a defendant to make an intelligent waiver will depend on the facts and circumstances of each case. *Id.* at 88.   A court may review the entire record to determine what the defendant knew at the time he waived his right to counsel. *Rose v. United States*, 590 F. App'x 937, 941 (11th Cir. 2014); *Jones v. Walker*, 540 F.3d 1277, 1295 (11th Cir. 2008) (""We review Jones' performance during trial, not because we wish to determine whether his trial conduct was good or bad, but because his performance at trial provides some circumstantial evidence of what he knew at the time he waived his right to counsel.").

   The issues at Petitioner's trial were simple.   In his opening statement, the prosecutor summarized the case as follows:

> What the State is going to show you is that back April 24, 2007, a year ago, there was a house owned by Mr. Kuehn and his wife.   There was a car sitting in the driveway at the house. That car was the little Pontiac you heard the judge mention.
>
> On that particular day, a gentleman approached that car He didn't have any right to get in it or take anything out of it, but he did.   One of the items he took out of that car was a garage door opener, specific to Mr. Kuehn's garage door, and he pushed that button.   He pushed that button and opened the garage door and he took some other items out of that car.
>
> After he opened the garage door, he went inside the garage and helped himself to a refrigerator in the garage.   He never had permission to go in the house.   He violated the house, which is the property of Mr. and Ms. Kuehn.
>
> Mr. Kuehn heard the garage door open.   He knew it wasn't him or his wife because his wife was in the other room. He

went around to see who it was.   He saw the person running away.   He didn't see the person's face, but he saw he was wearing a white shirt, dark pants, and he was running in a certain direction.

The police were called and started following the trail, following the trail up the yard.   They see laying there is part of the property taken from the car – a plug lighter, one of those you plug into the car lighter.

Then there was a footprint, and the footprint was unique to a particular type of shoe.    The police officer took pictures of that footprint.

Mr. Kuehn described the man running into a house, not the next one, but one house over.   The police approached that house.   They got consent to search that house from another party and went inside.   A few minutes had passed in doing this.

Inside of the garage of the house they were searching was a refrigerator.   In that refrigerator, low and behold, was the garage door opener that goes to Mr. Kuehn's house.

Another police officer confronted the defendant standing outside.   He notices he has unusual sneakers on.   He looks at the sole of that sneaker.   The sole of the sneaker is identical to the footprint near where the charger was dropped from the Kuehn house to the place where the garage door opener was found.   That's how we tied this case together. That's what the evidence is going to lead you to.   He went in; he took the garage door opener, which ended up in the end of this in the refrigerator of the place he escaped to.   He left a footprint.   That footprint was the only footprint of that type anyone anywhere around there.    They took that into evidence and we'll have that for you today.

(Ex. 11 at 41-43).   Prior to trial, Petitioner filed a motion to suppress in which he asserted

that there was no probable cause to seize the shoes he was wearing at the time of his

arrest (Ex. 9).   Petitioner conducted himself properly at the suppression hearing and ably

questioned and cross examined the law enforcement witnesses (Ex. 10).    At trial,

Petitioner cross examined witnesses, asked for a jury instruction on lesser included

offenses, moved for a judgment of acquittal at the conclusion of the state's case, and objected during the state's closing argument (Ex. 11).   Petitioner made a cogent and persuasive closing argument that he was not the burglar. *Id.*at 151-53. Petitioner's competency in representing himself at the suppression hearing and at trial provides strong evidence that he possessed knowledge of the legal system and what self-representation required.   See *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1067 (11th Cir. 1986) (a petitioner's "knowledge of possible defenses tends to show that he understood at least some of the complexities of his case.").

In light of the record, which supports the state court's determination that Petitioner's waiver was knowing and voluntary, combined with the lack of any assertion by Petitioner that he did not fully understand the charges against him or the punishments he faced if found guilty, the Court concludes that the state court's adjudication of this claim was reasonable.   Petitioner has not demonstrated entitlement to habeas relief on Claim One, and the claim is denied.

## B.    Claims Two, Nine, Eleven and Thirteen

In Claim Two, Petitioner asserts that appellate counsel was ineffective for conceding that the trial court made an adequate *Nelson* inquiry (Doc. 1 at 6).[7]   Petitioner argues that an inadequate *Nelson* inquiry resulted in the trial court concluding that Gotera's representation was adequate.   Therefore, he was forced to waive his right to counsel or proceed to trial with Gotera. *Id.* at 7.   Petitioner raised this claim in his state

---

[7] Petitioner also makes assertions of ineffective assistance of trial counsel for Gotera's activities that occurred *after* she no longer represented him (Doc. 1 at 8). Because it is axiomatic that there can be no ineffective assistance rendered by a non-representing attorney, these claims will not be addressed. *See* discussion *infra* Note 9.

habeas petition where it was denied by Florida's Second District Court of Appeal (Ex. 21 at 10; Ex. 22).   In Claims Nine, Eleven, and Thirteen, Petitioner asserts that Gotera was ineffective for failing to file pre-trial motions, investigate, and seek additional discovery, and for failing to inform the trial court that she had a conflict of interest with Petitioner because of her deficient performance (Doc. 1 at 21-23, 24-25, 26-30).

The trial court's duty in a *Nelson* inquiry is to "make a sufficient inquiry . . . to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant." *Nelson*, 274 So.2d at 259. Petitioner filed a motion for a *Nelson* hearing on November 27, 2007 outlining his reasons for seeking substitute counsel (Ex. 5).   Gotera also filed a motion seeking a *Nelson* hearing (Ex. 6).

At the hearing on his motion, Petitioner indicated that he was upset because Gotera refused to adopt the *pro se* motions he attempted to file; would not speak with him about the evidence; did not ask Petitioner's preferred questions at depositions; did not provide Petitioner with copies of deposition transcripts; did not adequately cross examine a witness about the brand of a beer can found at the crime scene; was conspiring to cover up the fabrication of evidence against him; had photographs he never received; did not believe that there was "good faith" to question some of the evidence; and became angry with him when he tried to speak with her (Ex. 6 at 166-72).   The court quizzed Petitioner about the wisdom of asking the deposition questions he provided to Gotera and implicitly determined that Gotera had the right to decide which questions to ask at depositions. *Id.* at 166-68.   Gotera told the court that Petitioner had received all of the discovery she had received and that he would receive the deposition transcripts as soon as she had them in

her possession. *Id.* at 170-71.   Gotera also told the court that Petitioner's Florida Bar complaint on the issues raised at the hearing had been closed because there was insufficient evidence to support Petitioner's accusations. *Id.* at 171.

By concluding that Gotera's representation was adequate, the trial court believed her claims that she had provided Petitioner with his requested discovery and had adequately represented him and did not credit Petitioner's assertions that Gotera was involved in a conspiracy to fabricate evidence against him.   Questions of the credibility and demeanor of a witness are questions of fact, entitled to the AEDPA's presumption of correctness. *Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999); 28 U.S.C. § 2254(e).*   Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger, 459 U.S. 422, 434 (1983).*

Under the AEDPA's "doubly deferential" standard of review, both counsel and the state court have the benefit of the doubt. *See Burt v. Titlow, 134 S. Ct. 10, 13 (2013).* Accordingly, in order to demonstrate entitlement to federal habeas relief on Claim Two, Petitioner must show that no reasonable appellate counsel could have concluded that the *Nelson* inquiry was sufficient, <u>and</u> that the post-conviction court's conclusion on this issue was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Id.* at 16 (quoting *Harrington, 131 S. Ct. at 786-87*).   Petitioner has not met this burden.   The trial judge conducted an extensive inquiry into Petitioner's appointed counsel and concluded that Gotera's representation was not inadequate.   The necessity and sufficiency of such an inquiry is a matter of Florida law.[8]   Florida's Second

---

[8] Although the constitutional ineffectiveness of appellate counsel is a question of

District Court of Appeal denied an identical claim in Petitioner's state habeas petition (Ex. 22); *Hamilton v. State*, 43 So. 3d 49 (Fla. 2d DCA 2010).   Petitioner has not shown how the denial was contrary to *Strickland* or based upon an unreasonable determination of the facts.

Competent appellate counsel could have concluded that the trial court conducted an adequate *Nelson* inquiry and that Gotera's representation was adequate. Accordingly, Petitioner is not entitled to habeas relief on Claim Two. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (In light of the "strong presumption in favor of competence," we have held that in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").   Likewise, because Petitioner has not overcome the trial court's conclusion that Gotera's pre-discharge representation was adequate, he is not entitled to federal habeas relief on Claims Nine, Eleven, or Thirteen.[9]

---

federal law, when the answer to the question turns on whether counsel should have raised an issue of state law, deference must be given to the state court's decision regarding its own laws. *See Hargrove v. Solomon*, 227 F. App'x 806, 808 (11th Cir. 2007).

[9] Because Petitioner dismissed Gotera as his defense counsel prior to trial, she had no continuing obligation to investigate the facts of his case. This Court will not speculate as to the additional investigation Gotera would, or would not, have performed had she not been dismissed.   Nor has Petitioner explained why he did not seek to complete Gotera's allegedly deficient investigation after her discharge.   A defendant who chooses to represent himself cannot then complain that the quality of his own defense amounted to a denial of the right to receive effective assistance of counsel. *Faretta*, 422 U.S. at 834 ("[W]hatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'").   To the extent Petitioner urges that, as stand-by counsel, Gotera should have continued her investigation of his case after her discharge or that he, as a *pro se* defendant, had no obligation to do so, the claim is meritless.   "Petitioners cannot both have their *Faretta* cake and eat it by choosing *pro se* status over appointed or retained counsel and thereafter, blaming standby counsel for supposed missteps and omissions." *Lofton v. California*, No. CV 08-06526 JVS, 2011 WL 1260042 (C.D. Cal. Jan. 19, 2011) (citing *Wilson v. Parker*, 515 F.3d 682, 697 (6th

C.      **Claims Three and Twelve**

In Claim Three, Petitioner asserts that appellate counsel was ineffective for failing to argue that the trial court erred when it denied his motion to suppress (Doc. 1 at 10-12). Petitioner raised this claim in his state habeas petition, and it was denied by Florida's Second District Court of Appeal (Ex. 21 at 15; Ex. 22).   In Claim Twelve, Petitioner asserts that Gotera was ineffective for failing to file a pretrial motion to suppress evidence (Doc. 1 at 25).

In his *pro se* motion to suppress, Petitioner argued that his shoes were illegally seized and used to fabricate a shoeprint at the crime scene (Ex. 9).   At his suppression hearing, Petitioner argued that photographs taken of the print proved that the police "took a picture of [the footprint]; it wasn't good enough, so they re-did it over the same area." (Ex. 10 at 4-6).[10]

Three witnesses testified for the state at the suppression hearing (Ex. 10).   Officer Lisa Dupuis testified that she investigated a call about a burglary, and another officer pointed out a footprint at the crime scene. *Id.* at 10.   Deputy David Reiser testified that Petitioner was arrested because he was wearing clothing described by the witness to the burglary. *Id.* at 19-20.   He testified that a footprint was found prior to Petitioner being

---

Cir. 2008) (to the extent standby counsel failed to act during the trial, Petitioner "merely suffered the consequences of his decision to proceed pro se.")).

[10]     Petitioner seems to believe that the police attempted to make a shoeprint, took a photograph, and when the photograph was not good enough, made a new shoeprint and re-photographed it.  Then, according to Petitioner, the police presented both photographs as evidence.   When the trial court noted that, if the state was going to frame Petitioner, "they probably would have done a better job" than taking two allegedly inconsistent photographs (Ex. 10 at 6-7), Petitioner insisted that "[b]ut what they did, they – since they'd already forged a track, they just went ahead and redid it again under the same area." *Id.* at 7.

placed under arrest and while the shoes were still on his feet. *Id.* at 21.   The tread in the footprint was identical to a print later found and photographed. *Id.*   Detective Matthew Sands testified that he collected evidence at the crime scene, including Petitioner's shoes. *Id.* at 30.   Sands testified that he took photographs of the footprint found at the crime scene. *Id.* at 31.   Although Petitioner urged that differences between two photographs of the shoeprint proved that the photographs had been forged, Sands testified that the differences were due to the angle at which the photographs were taken. *Id.* at 3-7, 34, 37, 39, 42, 44.   The motion to suppress was denied.

Based on the evidence presented at the suppression hearing, specifically Reiser's testimony that the shoeprint was found at the crime scene prior to the seizure of Petitioner's shoes, and that the shoes were seized after Petitioner's arrest, the state court reasonably concluded that the seizure of Petitioner's shoes was lawful under the Fourth Amendment and that the shoeprints found at the crime scene had not been forged.   *See United States v. Edwards*, 415 U.S. 800, 807 (1974) (holding that generally, "once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant[.]"),*overruled on other grounds by United States v. Chadwick,* 433 U.S. 1 (1977); *Illinois v. Lafayette,* 462 U.S. 640, 643 (1983) ("[T]he inventory search constitutes a well-defined exception to the warrant requirement.").   Competent appellate counsel could have reached the same conclusion.

Under the AEDPA's doubly deferential standard of review, Petitioner is not entitled to federal habeas relief on Claim Three.   Likewise, because Petitioner's grounds for suppression were meritless, Gotera was not ineffective for failing to file a pre-trial motion

to suppress, and Petitioner is not entitled to habeas relief on Claim Twelve.

### D.     Claims Four and Ten

In Claim Four, Petitioner asserts that the trial court erred when it allowed him to proceed *pro se* because the court was aware that Petitioner suffered from a social anxiety disorder and was on medication (Doc. 1 at 12).   Petitioner also asserts that appellate counsel was ineffective for failing to raise this claim on direct appeal. *Id.* at 13.   In Claim Ten, Petitioner asserts that Gotera was ineffective for failing to file a pre-trial motion to determine Petitioner's competency. *Id.* at 23.

The United States Supreme Court recognizes that the standard for competency to waive the assistance of counsel is the same as the standard for competency to stand trial. *Godinez v. Moran*, 509 U.S. 389, 399-400 (1993).   The standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960) (internal quotation marks omitted); *see also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial").

A court is not required to make a competency determination in every case in which a defendant seeks to waive his right to counsel.   Rather, a competency determination is necessary only when a court has reason to doubt the defendant's competence. *See Drope*, 420 U.S. at 180-81; *Pate v. Robinson*, 383 U.S. 375, 385 (1966).   In a *Pate* claim, a petitioner must establish that the state trial judge ignored facts raising a "bona fide

doubt" regarding the petitioner's competency to stand trial." *James v. Singletary*, 957 F.2d. 1562, 1572 n. 15 (11th Cir. 1992).   Although there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed," "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant." *Drope*, 420 U.S. at 180.

Other than Petitioner's self-serving assertion at his *Nelson* hearing that he suffers from "social anxieties" (Ex. 6 at 11) and his current assertion that he takes an unspecified medication, he has not shown how he lacked the capacity to "understand the nature and object of the proceedings against him" or pointed to facts which would create a substantial doubt about his competency. *Drope*, 420 U.S. at 171.   Petitioner filed several relevant *pro se* motions, (Ex. 5; Ex. 8), expressed himself articulately at both the *Nelson* hearing and the hearing on his motion to suppress (Ex. 6; Ex. 10), and conducted himself appropriately at trial (Ex. 11).   Nothing in the record indicates that the trial court should have had a bona fide doubt about Petitioner's competence.   Accordingly, the state court's conclusion that appellate counsel was not ineffective for failing to raise Claim Four on direct appeal was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts.   Likewise, nothing in the record indicates that Gotera should have been alerted to Petitioner's alleged incompetency prior to her discharge. Accordingly, Claims Four and Ten are denied pursuant to 28 U.S.C. § 2254(d).

### E.    Claim Five

Petitioner asserts that appellate counsel was ineffective for failing to "raise [an] issue on appeal" regarding Petitioner's motion for additional discovery (Doc. 1 at 13).   It appears that Petitioner refers to a January 31, 2008 document entitled "Additional

Discovery Request" in which he asked for transcripts of witness statements, results of fingerprints, and photographs of footprints and "all homes photographed." (Ex. 30).

Petitioner did not raise this claim as a discovery violation in the trial court.   Where a defendant fails to timely object to a discovery violation, he does not preserve the point for appellate review. *Celestine v. State*, 717 So.2d 205, 206 (Fla. 5th DCA 1998) (citations omitted) (finding that the issue of the trial court's failure to conduct a *Richardson*[11]  hearing was not preserved for appellate review because the defendant failed to make an objection when the discovery violation occurred and raised the argument for the first time on appeal); *Major v. State*, 979 So. 2d 243, 244 (Fla. 3d DCA 2007) ("Where a defendant fails to timely object to a discovery violation or to request a *Richardson* hearing, the defendant does not preserve the point for appellate review.").

Because appellate counsel would have been precluded under Florida law from raising this claim on direct appeal, he was not ineffective for failing to do so. *See Johnson v. Moore*, 837 So. 2d 343, 347 (Fla. 2002) ("Appellate counsel cannot be deemed ineffective for failing to raise a claim that was not preserved below or that is without merit.").   Claim Five is denied pursuant to 28 U.S.C. § 2254(d).

### F.    Claim Six

Petitioner asserts that appellate counsel was ineffective for failing to argue that the trial court erred when it denied his motion for a judgment of acquittal because only circumstantial evidence was used to convict him (Doc. 1 at 15).   Petitioner raised this

---

[11] *Richardson v. State*, 246 So. 2d 771 (Fla. 1971). "Once a trial court has notice of a discovery violation, the court must conduct a *Richardson* hearing to inquire about the circumstances surrounding the state's violation of the discovery rules and examine the possible prejudice to the defendant." *Jones v. State*, 32 So. 3d 706, 710 (Fla. 4th DCA 2010).

claim in his state habeas petition where it was denied by Florida's Second District Court of Appeal without a written opinion (Ex. 22); *Hamilton v. State*, 43 So. 3d 49 (Fla. 2d DCA 2010).

In moving for a judgment of acquittal, a defendant "admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence." *Beasley v. State*, 774 So.2d 649, 657 (Fla. 2000) (quoting *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974)).   Under Florida law, "burglary" is defined in pertinent part as impermissibly "[e]ntering a dwelling, a structure, or a conveyance with the intent to commit an offense therein[.]" Fla. Stat. § 810.02(b)(1) (2007).   A person commits theft "if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another" with the intent to deprive the other person of a right to the property or appropriate the property to his own use. Fla. Stat. § 812.04(1)(a)-(b) (2007).

In the instant case, the victim testified that he heard his garage door open, and he observed a white male wearing a white shirt and dark pants run from his garage (Ex. 11 at 127-28).   He saw the male run to a house two doors away and yell, "open the door, Randy." *Id.* at 128.   A red bottle, which was found in front of the home where Petitioner was staying, had been taken from the victim's garage refrigerator. *Id.*   The burglar ransacked a car belonging to the victim's wife, taking several items and some money. *Id.* at 128-31.   Police testified that a footprint was identified in between the crime scene and Petitioner's residence. *Id.* at 53.   The shoeprint matched the tread pattern on the bottom of Petitioner's shoe. *Id.* at 55.   A beer can found in the victim's car was the same brand that Petitioner was drinking when the police went to question him. *Id.* at 56.   Items

belonging to the victim were found in Petitioner's residence. *Id.* at 60-61.

Viewing the evidence in the light most favorable to the state, it was sufficient for the jury to find Petitioner guilty of burglary of a dwelling, burglary of a conveyance, and petit theft.   Accordingly, the trial court did not err by denying Petitioner's motion for a judgment of acquittal, and appellate counsel did not err by failing to raise this issue on direct appeal.   Moreover, Petitioner did not argue in his motion for a judgment of acquittal that the evidence against him was wholly circumstantial.[12]   Rather, he argued only that the state presented no evidence of Petitioner being on the victim's property and that certain evidence "was found under suspicious reasons[.]" (Ex. 11 at 138).   Accordingly, appellate counsel could not have raised the argument set forth in the instant habeas petition because it was not preserved. *See*, *e.g., Woods v. State*, 733 So.2d 980, 984–85 (Fla. 1999) (rejecting the appeal of the denial of a motion for judgment of acquittal that failed to fully set forth "the specific grounds upon which the motion was based"); *Pryor v. State*, 48 So.3d 159, 162 (Fla. 1st DCA 2010) (finding a motion for judgment of acquittal that failed to raise the defendant's knowledge insufficient to address that element in a charge of tampering with evidence).

The state court's rejection of this claim was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts.   Claim Six is denied pursuant to 28 U.S.C. § 2254(d).

G.   **Claim Seven**

---

[12] Nor could he have done so.   Contrary to Petitioner's assertion that this case is wholly circumstantial, the state presented direct evidence in the form of eyewitness testimony from the victim providing a physical description of the burglar (Ex. 11 at 127-28, 132).

Petitioner asserts that former counsel Gotera was ineffective for filing a statement of judicial acts to be reviewed on direct appeal that contained verbiage inapplicable to his case (Doc. 1 at 19).[13]   Petitioner asserts that the inclusion of a statement in the statement of judicial acts to be reviewed established that "Kristina Gotera knew nothing about Petitioner's case." (Doc. 1 at 19).

Although the statement at issue was undoubtedly put into Gotera's statement in error, Petitioner's appellate attorney was not bound to include Gotera's extraneous verbiage in its brief on appeal, and in fact, did not do so.   *See Ivey v. State*, 775 So. 2d 306, 307 (Fla. 2d DCA 1999) ("[A] trial attorney's recitation of judicial acts to be reviewed frequently bears no resemblance to the questions actually raised on appeal."). Accordingly, Petitioner has not shown how the outcome of his appeal would have differed had Gotera more carefully proof-read her statement of judicial acts to be reviewed. Petitioner has not demonstrated prejudice, and this claim fails to satisfy the second prong of *Strickland*.   Claim Seven is denied pursuant to 28 U.S.C. § 2254(d).

### H.   Claim Fourteen

Petitioner asserts that he was denied due process because the witnesses and prosecutor referred to crime scenes not related to the charges against him (Doc. 1 at 30-

---

[13]   According to Petitioner, the statement contained the following statement which had nothing to do with his case:

> The trial court's denial of Defendant's Motion for judgment of acquittal after the verdict.   Said motion indicating that given the totality of the evidence and the testimony of eminent threat to the Defendant's life, that the action taken by the Defendant was not wanton, reckless, or grossly careless.   The threshold of culpable negligence was not met.

(Doc. 1 at 19).

32). Petitioner raised this claim in his Rule 3.850 motion where it was denied by the post-conviction court as procedurally barred because "substantive claims of prosecutorial misconduct could and should have been raised on direct appeal." (Ex. 27) (citing *Spencer v. State*, 842 So. 2d 52, 60 (Fla. 2003)). Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 29); *Hamilton v. State*, 107 So. 3d 413 (Fla. 2d DCA 2013).

A petitioner requesting a federal court to issue a writ of habeas corpus must present his claims to the state courts in a procedurally correct manner. *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995). The procedurally correct way for Petitioner to raise a claim of prosecutorial misconduct is by direct appeal. *See Spence v. State*, 842 So. 2d 52 (Fla. 2003) ("Spencer's substantive claims of prosecutorial misconduct could and should have been raised on direct appeal and thus are procedurally barred from consideration in a postconviction motion."); *Smith v. State*, 445 So.2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."); *Sampson v. State*, 845 So.2d 271, 272 (Fla. 2d DCA 2003) (claims of trial court error should be raised on direct appeal). In Florida, a District Court of Appeal's *per curiam* affirmance of a circuit court's ruling explicitly based on procedural default "is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts." *Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990).

Each of the alleged violations appears on the trial record and could have been raised on direct appeal. Because Petitioner failed to properly raise a claim of prosecutorial misconduct in appropriate state court proceedings, resulting in the application of a procedural bar by the state courts, the claim is likewise procedurally

barred from review in this Court.   Petitioner has failed to demonstrate cause for not raising this claim in the state courts or actual prejudice resulting from the errors of which he complains.[14]   Petitioner cannot overcome the procedural bar, and Claim Fourteen is dismissed.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   Certificate of Appealability[15]

Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA").   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the

---

[14] In his reply, Petitioner argues that, pursuant to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), ineffective assistance of counsel qualifies as cause to excuse a procedural default (Doc. 19 at 28).   In *Martinez*, the Supreme Court adopted a "narrow exception" to the rule adopted in *Coleman*. 132 S. Ct. at 1315. This "narrow exception" provides that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* *Martinez*' narrow exception does not provide Petitioner with relief. Claim Fourteen is not presented as a claim of ineffective assistance of trial counsel.   Nor could it be, given that Petitioner served as his own trial counsel at trial. *See* *Faretta*, 422 U.S. at 834 ("[W]hatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'").

[15] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Id.* As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      Claims Eight and Fourteen of the 28 U.S.C. § 2254 petition for habeas corpus relief filed by Lloyd Jay Hamilton are **DISMISSED**; the remaining claims are **DENIED**.

2.      Petitioner is **DENIED** a certificate of appealability.

3.      The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 9th day of July, 2015.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

SA: OrlP-4
Copies: Lloyd Jay Hamilton
Counsel of Record